Mr. Van Oort. Good morning, Your Honors, and may it please the Court, I'm Aaron Van Oort for Allianz. The central question presented by this appeal is whether people who knowingly and intentionally terminate their policies have to be treated separately from people who unknowingly and accidentally do so. If the answer is yes, if they have to be treated separately, then class certification has to be reversed because that's an individual process of sorting. And the answer is yes. The answer is yes because whether someone knowingly and intentionally terminated their policy is relevant to the elements of their contract's claims, it's relevant to the elements of the affirmative defenses, and it's relevant to the statute itself. And because it's relevant in all of those ways, class certification must be reversed not just on B3 but also on B2 because any relief has to go through liability and these are individual issues. So let me back up. Ultimately, this is a state law issue, correct? Yes. The claims are state law questions, and as I understand it, the district court effectively reached its decision by saying that all you had to prove was harm. You didn't actually have to prove breach of contract. Is that... I'm just trying to figure out what we're really trying to decide because it's straight... I mean, it strikes me these are breaches to contract claims, which I think is where you're coming from. So, Your Honor, the district court implicitly held lots of things without making explicit what it was doing. But let's just start with first principles, and you're right. There is no private right of action under these state regulations. It's 10,000, 113, 71, and 72. There's no private right of action. That's undisputed in here. So the only way of enforcing it is through some other cause of action. The only cause of action that was certified for the B3 class is breach of contract, and so you have the breach of contract elements, including breach in performance and injury and causation, all of which we say it turns on whether it was a knowing and intentional termination. And the plaintiff said in response, and I think this is what the district court implicitly did, is it implicitly said, well, if you look at the statutory obligations, it wipes out all of those because it cuts through and basically mandates an ongoing policy, even if the policy both parties agreed to terminate it, right? That's implicit. That's the only way you can make injury and causation and performance irrelevant because if it matters what both parties wanted, then you have to go through and figure out whether the policyholder was trying to do this. And there is some language in some of these provisions, not the ones that I think affect Ms. Small, but other ones that talk about the policy not being effective. And so what does that language mean for those, I guess it'd be other class members? Yeah. So you're right, Your Honor. First of all, there isn't any language. The language is the notice of termination for nonpayment of premiums will not be effective or shall not be effective. And there are variations on it. It's in 72C and 71B1. They're phrased different, but it's just as to that and it's just as to the notice of termination. And to me, what that says is that's speaking to what the insurance company can do unilaterally. It isn't placing any restrictions on what a policyholder can do. There's no intent in either of these statutes to limit anything a policyholder can do. So suppose that Allianz didn't send this annual reminder that you can do a backup notice recipient. And a policyholder calls in and says, I want to terminate. There isn't any limitation on this statute on what the policyholder can do. And we have examples like this in our record that are in this class list. It's the ELISA page declaration. The excerpts of record 725 to 727 have this. And we have examples like recordings and letters of people who do that. Plaintiffs, in order for their theory to work, they have to interpret this statute to say that if that annual reminder isn't given and a policyholder calls in and says, I want to terminate, they can't do it. It keeps going over their objection. Because if they agree that the intent of the policyholder matters, then that's an individual question. We've got to go figure it out. And the record shows that those individual questions are repeated. I guess their position is some of this could get sorted out in the opt-out process, at least for the B3 class? Yeah, that is their position, Your Honor. But it doesn't work. And it doesn't work for the same reasons that Judge Nelson, you explained in the Lara v. First National case. That was a similar case. It was an alleged violation of a Washington insurance regulation v. California. And the plaintiff said, well, that's just damages. We can take care of it in remedies. And what Your Honor said there, and it's equally true here, is no, it's liability. It's liability on contract. It's liability on anything else. Because, again, to go back to this, if the policyholder said, I want to end my policy, and the insurance company said, I agree, we're ending this, there's no liability. There isn't any liability unless you interpret this statute to take the extreme position that says, even if both contracting parties agree that they're done, nonetheless, the contract will continue. That's the so-called strict compliance argument. Yeah, and it goes beyond that, Your Honor, because, and this is true, so there are a number of California cases that deal with notice requirements under auto insurance policies, property insurance policies, and commercial carrier properties. There are none other than all the district courts that are in simultaneous proceedings here. There are none addressing life insurance. But in auto and property, they have had strict compliance. Every single one of those cases, though, dealt with an unknowing accidental termination. The facts are all the same. A notice wasn't met, and then within some short period of time, an auto accident happened or a fire happened, and the court said, unknowing and accidental strict compliance. None of them involved a situation where both parties said, we want to be done on that, or where the policyholder said, we want to be done. So that scenario has not been addressed. I think my question was a little different. I'm trying to parse out the plaintiff's theories of liability, and it seems to me that their theory of liability with regard to strict compliance is, and maybe you're saying the same thing, if you don't comply with all these technical notice requirements, if you don't advise the policyholder that they can designate a third person, then there is a violation of the statute, and the policy continues in existence without regard to the intent of the policyholder. That is their theory. Their theory is that a violation by the insurer puts limits not just on the insurer, but on the policyholder, too. And McHugh, the California Supreme Court case that interpreted this, didn't say it. McHugh's repeated the purpose of this statute is to prevent inadvertent, unknowing terminations. There's no indication in McHugh that it forces a contract to keep going when both parties agree it should be terminated. Well, I think your response to that with regard to the remedy as to damages would be there are no damages in that case, because the insured was giving up the policy. Yeah, I agree. And like I said, I think that this issue of, your honors can wrestle this down to the ground and figure out where knowledge and intent matter. I think it matters to causation. It matters to injury. It matters to whether the statute applies, because like I said, the statute limits what insurers can do unilaterally. The statute does not limit what policyholders can do. Well, the concern I have from the appellate judge's standpoint is we now have district court opinions that are all over the board wrestling with these theories. And it seems to me that we have an obligation to try and make some sense out of all of this and restore some order and give our district judges some clear guidelines as to how to handle these types of cases. So here's what I would say, your honor, and this goes back to McHugh. California's Supreme Court has already said what this is about. This is about preventing unknowing, unintentional lapses. It is not about restricting policyholders from canceling their policy when they want it. Like, they get replacement coverage, and they don't want to double it up. They get a new employer who provides coverage. They don't want to pay separately on this. They want to take the money out. We have an example here of somebody who surrendered and got $2.5 million back. And plaintiffs said, under their theory, he couldn't do that. McHugh has already said that. And in footnote 6, McHugh had already acknowledged that there may be some policyholders who deliberately let their policy end. So I think you've got the Supreme Court. Yes, this is the California Supreme Court McHugh interpreting this. So I think your honors have the guidance you need here to say that knowing unintentional terminations are different, knowing by the policyholder. And because figuring that out depends on individual evidence, like sometimes it's obvious in the files. You know, we have the report of Dr. Merrill in our record where he did a hundred policy sample. Roughly 80% had evidence even just in our records of intentional termination by the policyholder. But of course, that's just our records. To really litigate, you'd go and you'd talk to people. Could you do a subclass? I mean, the district court did. I guess that's what's before us, are these two subclasses that the district court certified. Is there leeway to do a subclass that's more narrow than that, that would still comply with these rules? I don't think so, your honor, because no matter what version of the subclass it would be. You're still asking individualized questions. Always you would ask, did the policyholder knowingly terminate? And if the answer is yes, there isn't any liability on that. Unless the plaintiff is right that it's a strict compliance statute, and I guess this is probably a question for your opponent, but then the question would become, what's the measure of damage for violation of the compliance? Yeah, and the plaintiffs aren't consistent with their theory. They don't take their own theory seriously, your honor. If they really think that what happens is if an annual reminder isn't sent, then the policyholder's intent to cancel doesn't matter, and it has to keep going even though both parties don't want it to. If that's their theory, then their whole opt-out theory doesn't make any sense either, because why should the intent matter now if it didn't matter then? I think I understand this, but let me ask you, I'm assuming most of these voluntary relinquishments are the result of term policies, where the term, say it's a 10-year policy, at the end of the 10th year, the insurance company says, we'll continue your million dollars worth of coverage, but your premium is going to be 10 times what you're paying now, because you're older and maybe you've developed some medical issues. So here's what the record says on that, your honor. The record on that says that about 93% of the term policies in this case terminated right when the premium spiked. So these are term, for the most part, term policies? No, but as between the two portions, roughly two-thirds, maybe a little more, are actually universal life, and only about a third or less are term. And those premiums don't change, but you do start taking money out of the residual value of the policy, right? Yeah, they do change, but it's not as sharp a spike. And they build up cash value, and people can take that cash value and use it for things. So we have examples, again, in the page declaration of people who canceled and got money out, and they're in plaintiff's class on that. I'll reserve the rest of my time for rebuttal, your honor. Thank you. Good morning, your honors. Benjamin Cimino on behalf of the plaintiff. I want to jump in on some of the things that we just heard, because I think there's some good questions. Number one, Judge Nelson, you asked whether or not the district court's order basically just skipped past the causation issue and just focused solely on breach. And the answer to that is no. We are not at all running away from a causation standard. I know that at least two members of this panel have recently emphasized that, and we're not shy about that at all. I think what we need to do here is take a step back and zoom out and look at the class as follows. Number one, we've got a B2 subclass that consists entirely of living insurance. That's about 98% of this 1,800-person class, so let's just say 1,700 people. Their issue is simply that they had policies that were terminated. Their interest, if any, is getting those policies reinstated. And as to them, we're only seeking a judicial declaration that says, hey, good news, this policy five, six years ago, whenever, that lapsed, is reinstatable. At what premium? Whatever the premium would be. Well, the premium might be 10 times what it was before. And what are you going to do with the class member who says, I don't want to pay 10 times the premium? I say, hallelujah, that's the answer to what my friend just said a moment ago, which is that we need to treat these people separately. You would agree there's no harm there, no causation? Well, I would say we don't need to prove harm for a B2 class. All we need to do is... I think that's where I'm getting caught up, because help me understand why you don't have to prove harm. It's not intuitive to me that you never have to prove harm in a claim. It's breach of contract claim, right? Well, the reason we don't have to prove harm ultimately is because we're not asking for money damages with the B2 subclass. That can't be right, though. I mean, the B2 class is premised on a legal violation, right? The legal violation, if the theory is breach of contract, you have to have met the elements of that claim to get the relief that follows from it. I mean, that gets back to the question of, is it enough to just claim that the notice provisions were violated? And I thought your position was, well, no, we do have to show causation and these other elements. Yeah, because... Well, then I'll attack it this way. The causation inquiry isn't, if we had done all the things that the statute required us to do, would you have made your payment timely, yes or no? That's the causation inquiry they want. That is not the causation inquiry. The causation inquiry is, assuming we canceled a policy, the carrier canceled a policy they were not legally allowed to cancel, did we deprive you of something of value, either insurance benefits or a policy that you wanted? If the answer to that is yes, then there is breach, causation, harm. We light up the Christmas tree. So let me... You're saying that what they were deprived of is the opportunity to decide. Correct. That's your point. And they may have decided to cancel it. They may have not decided to cancel it, but they were deprived of that opportunity. And that's enough to show a breach. To at least give them the opportunity to now make that election. I'm just not sure that that satisfies all of the breach of contract provisions though. Well, but in a scenario where someone gets that in the mail and they say, oh my goodness, I remember this and I did want that policy and I was so disappointed when I found out that it lapsed. Fantastic. Yes, I could not wait to send this in. Do you have any indication of how many of the, would you say 1,700, would fall within that category that you just described? I don't know. No. I don't know. I thought he said 93%. No, sorry. Maybe I misunderstood the question. I think they're two different questions. This question is how many would fall within the category of, oh, I really would like to have that policy. Right. But I don't, that's the problem for me is it seems unanswerable because it goes to questions that Judge Tallman was asking, which is if this was five years ago, then all of a sudden they're going to have to readjust a much higher premium or 10 years ago. So all this seems to point to individualized inquiry. Let me speak to that if I may, Your Honor, because I think that the problem that they're really articulating is one of over-inclusivity, okay? That you're going to scoop up all these people who had these policies terminated, you say illegally and in breach, and some of those people actually wanted to get rid of this policy and don't want it. And so- Which you would agree with. Well, I would agree that there's some people there and my answer to that is fine. Do what you should have done back then. Send everybody these notices. And if you're right, that there's a bunch of people who look at that number and go, no, thank you, then they're not going to respond. They're not going to take it. There's going to be some subset who do. And I would venture to guess- Look, I give you that there's something inherent here that you want to redo. But the problem with this is putting anybody back in the position that they were. I mean, first of all, the law wasn't clear at the time. Then you have the Supreme Court decision basically three years ago that says, oh no, this goes to anything that was in existence at the time. So now everybody's trying to reconstruct this, but it still doesn't state a claim. I mean, you have some relief, I understand that you're seeking, but I don't know how it fits within a theory of a breach of contract. Because that turns entirely on whether or not the people wanted the policy and they wanted the benefits. And all I'm saying is they were deprived of that opportunity by the letter of the law.  Everybody was deprived of that opportunity. But after that, it branches. That isn't what states a breach of contract claim in and of itself. And so all the other things make this an individualized inquiry. That's where we disagree, Your Honor. Just because I think it's individualized that it may vary from class member to class member. I guess technically, yes. But isn't that the question that the cases ask us to look at? No, because the question is, does the individualized inquiry, that's sort of the start. The question is, is it going to be yet a mini trial? And here it's not because it's a binary answer. Wouldn't there also be a subset of the 1700 who have the policy reinstated, agree to pay the back premiums that were due and owing but not paid but they still are living. So the policy has not yet triggered the payout requirement. And I understand the insurance companies are now complying with the statute and giving all of these notifications. Where's the harm to that subclass of policyholders from the prior failure from January 2013 to, I don't know, when the lawsuit got filed or today, to the policyholder? Where's the harm to the people that still have policies? The living policyholder that they're not going to get the payout because it's a life insurance policy. Somebody's got to, the insured has to die before the insurance company's obligated to pay out on the policy. Well, the harm to them is that they lost, that goes to the core of why the statutes were drafted, that they've lost policies that they then had to go potentially secure alternative coverage. I don't think you're answering my question. Maybe I didn't frame it very well. There is a certain subclass of people who on January 2013, when the law went into effect and the insurance companies were not complying with the statutory requirements, up to some later point in time, say today, where we are assured that the insurance companies are complying with the statute. If those policies are reinstated and they pay all the back premiums that are owed, then they're not harmed, are they? They still have insurance coverage at a higher rate. They've chosen to keep it, but the policy hasn't kicked in yet in the sense that the insurance company is not obligated to pay the face amount of the policy because the insured has yet to die. So where is the harm in my hypothetical? It may be me that's misunderstanding, Your Honor, and if so, I apologize. But it sounds to me like you're asking me, where is this B2 subclass, the 1,700 harmed, if they get policies reinstated and they choose to pay it at a higher price? And my answer is, that's the relief that I'm seeking. That's why I'm here, is to get that exact reinstatement. And it sounds like I may not be doing well on that score, but that's my goal. So if that- Hasn't the insurance company offered that now in compliance with the statute? No, they- They're just taking the position that if policies lapse, then we no longer have any responsibility. Correct, and that's us- So you still need a declaratory judgment to the effect. Correct, and that's us all day. That's Ms. Small all day because she actually did try to reinstate the policy and process an application. She's got a claim under the policy, right? The insured died. She's got both, actually. And that's one quirk that they emphasized that I did want to touch on for typicality adequacy purposes is that she actually wears both hats as, well, three, really. Trying to reinstate whether we're living, but also have a claim for the deceased. Correct. She is a beneficiary for her husband, her late husband on that policy. She's also the owner and insured of a policy on herself. So she's wearing both hats. So she has two policies, basically. She's claiming as beneficiary under the husband's policy, but she has her own life insurance policy on herself. Correct. It's a family policy, so it may technically be one policy with the other coverage tacked on. There's more than one insured. I think that's fair to the extent that matters. But I did want to touch on the issue that I heard. I think it was you, Judge Bress, mentioned about the text may not cover the anti-lapse provisions. So my two responses to that. One is that there's a whole wealth of common law that goes back 40 years on this that I think we cited at page 19 of our brief that basically says when there's an anti-lapse provision with or without the text, the only way to construe those, at least in California, is that if you don't strictly comply with them, the policy remains in force. And then we do read the text to incorporate this third-party designee, right? And we think that that's just a pretty plain reading of the statute. It would be impossible. It's expressly included in the you don't send the notice, it doesn't terminate language in 0.71B1 and 0.72C. But there's no way to read that as being fulfilled if they haven't done the first step, which is to give the right to designate in the first place. So if they haven't done that, then those notices are just not operative. And therefore, that text kicks in. So how do we, I mean, the difficulty, obviously, is that there are people in the class who seemingly took affirmative action to get out of the policy. So how do we deal with those people? So two things there. One is, and this is a little bit of confusion that I want to clear up, so I'm glad you asked. There are some people who did affirmatively call the carrier and say, hey, I don't want this policy anymore. And they send them a surrender paperwork and they fill it out and that's done. Okay, we don't want those people. Those people we can readily ascertain, they're out, we're not interested. Okay, we'll come back to that in a second because it seems that they're covered by the class definition. And that would be somewhat problematic. If so, we can fix that. That's a glitch. I don't know about that, but okay, go ahead. But the other pieces, and I think the one that we've been discussing is what we call the soft surrenders, which are the people who call up and, I'm sorry, don't take any affirmative action, but they just take their foot off the gas ostensibly because the premiums are going to go up. And those are the people that we're, what do we do with them? Again, why throw the baby out with the bath water and say, well, we know that there's some people who are just right down the main street of what this statute protects, but we've got these soft surrender people, so, you know, sorry, everybody loses. Carrier, you get to keep your money. Instead, we say, take care of everybody. Send everybody a notice. If they're one of those unintentional, core main street people who did not want to lose their policy, they can take action to do it. That class, by the way, the people who respond is going to be under inclusive of the people who probably were actually affected however many years ago because they've moved on or they don't respond. I mean, response rates are low in general. And then the so-called soft surrender people who didn't want this are going to look at that and go, whoa, I wasn't interested in that six years ago. I'm less interested now. No, thank you. And we've tailored this class perfectly to the people who deserve to benefit from it. And so I'm not sure why we would blind ourselves to the reality of that mechanism. So is that your response to the insurer's claim that it's going to take hours to go through each individual policy file in order to make that determination? We'll just send them another notice and then they can either opt in or opt out.  I don't think we need to do any of that stuff for the B2 people. The B2 people, it's just your legal rights were violated. The terms of your statute were breached. Do you want this or do you not want this? Give them 30, 60 days. Like we would sort of re-redo it as they should have done it. It's going to be more than that. It's going to be, do you want this if you pay X dollars? Correct. Yeah, put the price on there. I'm happy with that. And then they'll get their complete piece instead of where we are now, which is these cases could keep cropping up. They get the complete piece. Everything's put to bed. They are doing everything they should be doing now, so we shouldn't have any problems. I guess I don't understand how the B2 is supposed to work because B2 is not an opt-out class. So how do you envision this actually happening? Because you're talking about people getting the notice and then opting out, but the B2 class binds you. You're in, and the implication here is that an order would be issued by a court saying, you are in an insurance policy now. And I don't really see how somebody would, what if somebody doesn't want that? It's not you are bound to this, like, congratulations, you're married to this policy, you now owe X. It's instead, you have a reinstatable policy, call it what you want, and take this golden ticket, this Willy Wonka golden ticket, and if you want the policy, redeem it. Might not be so cool. Well, right. And to some people, though, it may be, and that's the point. And we shouldn't throw the baby out with the bathwater, like I said. If you define the class in that way, aren't you just kind of pushing back the individualized issues that are inevitable in all of this? What if somebody comes back to Allianz and says, oh, yes, I received this notice? And the first response is, well, wait a minute here. Back at the time, you told us you didn't want this, and now you're telling us that you do. How are we going to figure out who's right about that? Why should Allianz have to trust what somebody says five years later when, at time one, they decided that they didn't want the policy? If they actually have proof that someone just really didn't want this policy, then I think that they can marshal those facts. If they don't, and I suspect they don't, because again, we're not talking about the hard surrenders. We're talking about the soft surrenders. If they don't have that, then we're stuck in this world of opt-in or opt-out. Again, I submit to you, it's going to be under-inclusive. It's going to be a smaller pool than it would have been if they had done what they were supposed to do in real time. That's number one. And number two, why should we bear the burden of this? They're the ones who are the sophisticated entity in a heavily regulated industry. And it was a simple thing. They could just send this thing out. A lot of the stuff they were already doing. I mean, the thing is, we don't have in front of us a claim like this. All we're talking about is, is this properly put together as a class, right? And so some of the concerns I'm raising are, you could be right that some individual could have a claim here and should prevail, depending on how you characterize the claim. At the same time, though, we're kind of also asking, well, is this really suitable for class treatment? And that's where some of this gets a little hairy to me. And I think it really is. I mean, we're on a case where you've got, I mean, how often do you get a class action where you can sort of identify everybody who's involved by a spreadsheet and the amount for at least the beneficiaries, the 2%, how much they're owed, also by reference to an Excel spreadsheet? I mean, you know, where I come from, Excel spreadsheets generally equal class certification. That's just, you know, this is not trying to value cars. And did you get, you know, was it black or was it some sort of special color? And did you get enough, you know, in the total loss? This is pretty straightforward. And it has the benefit of, again, of filtering out the very people that they're concerned about while delivering relief to the people who deserve it. I mean, to me, it's a perfect class case, actually. And then, I see I'm past my time. Yeah, you are. Unless there's other questions, if you want to just, if you have a closing sentence or so. Well, I guess the closing sentence would be this. The court certified this class. This court applies an abuse of discretion standard, and it's exceptional abuse of discretion under the Woolen case in that context. If that means anything here in this context, then I think your honors should affirm. Can I ask you before you sit down, I don't know if you're a class counsel on some of these other, there are some other cases that are pending. Can you give us your understanding of the universe of this litigation involving these notice provisions? Yes, and I'm so glad you asked. I am class counsel, and I think I've lost count, but there's like five of these others that we have. Poe is another that we don't. The one thing I can say about the universe there is that there is a motion to certify the statutory question, the text piece, your honor, that you mentioned that I touched on, to the California Supreme Court. The Moriarty case. It is, yes. And we picked that because it was last, number one, and number two, because it didn't have any of this class action noise. It just squarely presented, it's an individual case that squarely presented that substantive issue, so we think it's the perfect vehicle for it. We did file a joinder. I know that's technically not proper, my friends on the other side, you know, but the whole point was just to wave our hands to you and really to give them a vehicle to respond to that because they're not parties in Moriarty, so we were actually trying to do them a solid. If you have any doubt at all about .71, .72, the insurance statutes, I would implore this court to certify the question to the California Supreme Court so we can get some answers because there's some pretty strong language in McHugh that supports us. Thomas, I know it's unpublished as well. We think that's a pretty straight answer for us. I understand that the class action dynamics may differ, but getting an answer there really does do a lot of heavy lifting on all the class certification requirements. We do have about a half a dozen cases pending in front of different panels of this court, and that's just in the Ninth Circuit alone. I've got a notebook full of district court cases that are at various stages of percolation here, so as I say, I think somebody needs some adult supervision. I agree, Your Honor, and I think that can come from, A, the California Supreme Court on the substance, and B, the bright lines that I think I'm advocating for, which is did you get the statutory rights or did you not, and if the answer is no, congratulations, you have an opportunity to either reinstate your policy or if the insurance died while the policy should have been enforced but was passed by them, you can get a check. Thank you.  Your Honors, there's no right to any remedy, whether damages or injunctive, unless there's a cause of action, and my friend stood up and repeatedly agreed with Your Honors, I think. What about a declaratory judgment action? They've sought that as well, right? They sought a declaratory judgment, Your Honor, but in B-2, it's only appropriate if it's final declaratory relief, and the relief they're seeking, the thing that you could declare, the statutes apply, well, we already know that from McHugh, or if a notice wasn't sent, then there would be a declaration that the notice wasn't sent and it was violated, but there wouldn't be a cause of action because you still have to go through the elements of injury and causation there, as we pointed out, and my friend on the other side repeatedly said, the people who are entitled to relief are people who didn't know. I didn't know. Man, I didn't know I was lapsing. I wanted it then. We agree with that. He said, we're entitled to marshal our proof of the people who knew and knowingly canceled. We agree, but that proof isn't limited to our own files. So let me ask you about Small's claim, because the district court went further and decided summary judgment in favor of Small, correct? Yes. Is that, I mean, I suppose if we decertify or we say there's a problem with certification, does that automatically address the summary judgment? You won't get there, but what the district court will have to do on remand is reconsider summary judgment in light of whatever principles your honor set out. The only thing in front of your honor- But I mean, theoretically, the only principles we set out are whether this is certification worthy. They could all have these claims, and I'll be honest, when I was reading it, I thought Small, I mean, I didn't delve into it a lot, but it seemed like she had a decent claim. Yeah, Small, your honor, is one of the people who can claim, and a fact finder will have to decide that she didn't know and it was accidental. And we agree, your honor, that if people can prove there is a violation of the statute and as a result, they didn't know and it was accidental- Yours is just a mechanism by which to get there. That's exactly right, because again, to go back, there is a legal difference between people who knowingly and intentionally terminated. And my friend on the other side said that if there was a violation of the notice, then that means it was unknowing and intentional. No, it doesn't. The notice is just for a backup notice recipient, and we've got plenty of examples here in the facts where people knew. They got the notice themselves, and they said, I don't want the policy. And unless the court is willing to interpret this statute to abrogate the common law and say that when both contractual parties want to terminate the contract, it has to stay in force anyway, that's what you would have to hold to make this uniform. I want to speak briefly on B2 class. Ms. Small is a member of the small beneficiary class with the deceased insured. She is not a member of the class with a living insured. Even if she's covered under the family policy? That's the first I've heard of that. No, it's in our briefs. We address it at page 41, and my friend on the other side is not quite accurate here. She is not an owner. She is a beneficiary on that, and she was an additional insured, which means as long as her husband was living, there was coverage for her too. But as soon as he died, there's no more coverage for her. Which is why her claims for injunctive relief were dismissed long ago, and that's not appealed. She's trying to say she can still have declaratory relief, even though there's no more current interest by her there. So that's your typicality argument, is that she's only representing Yeah, when she was seeking one class, we pointed out that she wasn't typical of the living people. When the district court sue Esponte, said two classes, that makes it the really strong form where she's not adequate to represent a class that she's not part of. That would be a narrower way to reverse the B2 class here. But if your honors agree that it's legally relevant, whether the policyholder knew full well and knowingly and intentionally determined, if you agree that's legally relevant here, then that cuts across all forms of the cases, B2, B3. And to your honor's point, there is no indivisible injunction here. What they're asking for is one-off. Give them a choice to reinstate this policy, this policy. That's not a B2 mandatory class. That's an individual form of relief. What does this, what would this case do if we decided for the other five? Is this preclusive of the other five? Or maybe you don't know, because you're not in the other five cases. No, I've watched it. Your honors, there are eight cases in the Ninth Circuit now that raise variations on these statutory claims. Jumped up. I only knew of six. Oh, there's two more. Oh, seven if you count ours. Yeah, no, there are some, some are class certification variations, some are merits, and then there are 24 in the district courts. But your honor, this would be, you would be the lead panel on this. And so it'd be started. I understand that. But that's my question is, are they, to the extent you know, are all the other claims the same? Or would those cases still have to go forward? There are, they're all variations on the same claims that, you know, there are five different provisions, notice provisions here. Ms. Small only has one. She has the honor reminder. Some other plaintiffs have other alleged violations of different subparts of this. And so I'm not going to say that what your honor, depending on what grounds you, your honors ruled on, it would have broader or narrower effect here. But if you get to the point of agreeing that, evidence of whether somebody knew full well and wanted to cancel, if you agree that's legally material, that is going to provide adult supervision to the entire set of cases. I'm not sure there's a parallel for the panel on multi-district litigation, but would those 24 cases benefit from consolidation before a single district judge? That's a question I haven't thought of. And I'm sure, you know, the other insurers that I don't represent would not want me to speak for them, your honor. No, I think it's, I actually think stare decisis and lead panel is sufficient to resolve most legal questions. You don't need to do anything more formal or official to actually get these in order. I'm not sure there's even a way to do it, but I like to think outside of the box occasionally. Okay. All right. Thank you, your honor. Thank you. Thank you both counsel for your arguments. Very helpful. Yeah, very interesting case. The case is now submitted and we'll move on to our final argument.
judges: TALLMAN, NELSON, BRESS